# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARL WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Case No.  03-317-DRH |
| ) | |
| T.J. COLLINS, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is defendants' motion for summary judgment (Doc. No. 32). Plaintiff, Carl Wilson, filed this civil rights action pursuant to 42 U.S.C. § 1983. He challenges the conditions of his pretrial detention at the St. Clair County Jail in 2002. Specifically, plaintiff claims that defendants Steinhauer and Collins placed him in jail's segregation unit for an extended period of time in violation of rights protected by the due process and equal protection clauses of the Fifth and Fourteenth Amendments.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To determine whether there is a genuine issue of material fact, courts construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The material facts are summarized as follows. On June 24, 2002, plaintiff was arrested in Missouri on an outstanding warrant. He was extradited to Illinois, where he was detained at the St. Clair County Jail on charges that he violated the conditions of parole and committed first degree murder.

The St. Clair County Jail is composed of separate units, including a maximum security unit and two murder blocks. The maximum security unit doubles as the disciplinary segregation unit. Detainees confined to the maximum security unit are isolated from other detainees and have limited access to privileges.

When plaintiff arrived at the St. Clair County Jail, he met with defendant Steinhauer, whose duties include those of classification officer and disciplinary officer. Steinhauer assessed plaintiff's classification using a method based on jail policy, a handbook outlining standards for county jails in Illinois, and his years of experience. He interviewed plaintiff, reviewed booking records and a criminal history report, and spoke with law enforcement officers. Steinhauer did not attempt to collect information from other sources, such as correctional or probation officers. Also, Steinhauer did not seek a medical exam or psychological screening. According to a general order issued by the St. Clair County Sheriff in January, 2001, such efforts may have been warranted.[1]

After gathering information, Steinhauer entered data into the St. Clair County Sheriff Department's classification system, which automatically calculates inmate risk based on a point

---

[1] The Order states that classification officers must use information from "at least the following sources...." The sources listed are booking records, medical/psychological screening exams, criminal records and pre-sentence reports from the probation department, institution reports from prior incarcerations, state and local police/sheriff records, NCIC data, and inmate interview (Doc. No. 37, Ex. E).

system. Steinhauer's entries accurately described plaintiff's current charges (murder), serious offense history (violent prior offense), prior felony convictions (two convictions), bond (more than $120,000), outstanding warrants (1 pending felony warrant), alcohol/drug abuse (no), address stability (same address less than 24 months), and age (31 to 50). Steinhauer also made a fairly accurate assessment of plaintiff's personality characteristics (responsive, assertive, alert, aggressive, institutionalized). However, Steinhauer's entry for escape history was not quite accurate. Steinhauer entered "attempted escape." While plaintiff did not have a history of attempted escape, Steinhauer made this entry based on statements made by plaintiff and a law enforcement officer that he had taken a hostage at a correctional facility.

Steinhauer did not know the details of the hostage incident. He inferred that plaintiff was combative, based on the assumption that the correctional officer did not volunteer to be taken hostage. The "attempted escape" entry may have added enough points to change the outcome of the assessment.

Steinhauer's entries produced an assessment placing plaintiff in the "maximum plus" risk category. Based on the automatic assessment, along with Steinhauer's subjective assessment of plaintiff's physical stature, plaintiff was assigned to the jail's maximum security unit. Steinhauer felt that plaintiff needed to be watched in a controlled environment to see how he would react to the facility.[2] Steinhauer prepared a segregation tag instructing jail staff to use two officers to move plaintiff and provide access to commissary, visitation, phone, and recreation privileges.

---

[2] Plaintiff's height was reported at 6 feet and his weight was estimated at 230 pounds. Steinhauer's perception was that plaintiff was a "big man."(Doc. No. 37, Ex. A, pp. 15).

At about the same time, Steinhauer assigned Rafael Jackson, another detainee, to a murder unit. Rafael Jackson was facing charges of murder, highjacking, and aggravated highjacking. Jackson did not share plaintiff's history of taking a correctional officer hostage.

Plaintiff's housing assignment was reviewed on a regular basis by a committee known as the Classification Review Board (CRB). Defendant Steinhauer served as a member of the CRB. At some point, plaintiff requested a new housing assignment. The CRB found that plaintiff had not been a problem in the maximum security unit and decided he might be able to live with the general inmate population without creating problems. Plaintiff was reassigned to a murder unit on August 28, 2002, after being confined to the maximum security unit for approximately 64 days.

Defendant T. J. Collins reviewed and approved decisions made by Steinhauer and the CRB. Collins considered the jail's classification system to be an on-going process.

### I. Due Process

The issue presented is whether these facts could support a finding that the defendants subjected plaintiff to conditions amounting to nontrivial punishment for the crime charged. *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979). In the context of pretrial detention, punishment requires something more than routine discomfort – it requires an extreme deprivation over an extended period of time. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). When a detainee is segregated from other detainees for managerial reasons, he or she is not entitled to notice and an opportunity to be heard unless the separation is excessive in relation to the purpose, in which case the action is deemed punitive. *Bell v. Wolfish*, 441 U.S. at 538; *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002).

In evaluating the purpose behind the decision to segregate plaintiff, the Court's role is not

to second guess that decision. In addition to protecting detainees from punishment, the Fourteenth Amendment also protects detainees from harm from other prisoners. *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992). Hence, when jail officials balance matters of internal order and security, their decisions are entitled to wide-ranging deference. *Whitman v. Nesic*, 368 F.3d 931, 934-35 (7th Cir. 2004).

The only rational inference that can be drawn from the facts presented is that plaintiff was temporarily assigned to the maximum security unit between June 24 and August 28, 2002, not as punishment for the crime charged but for the legitimate purpose of allowing jail officials to maintain control over plaintiff and keep the jail secure. Defendant Steinhauer based his initial housing decision on a fairly accurate assessment of factors that rationally permit a finding that plaintiff presented a high security risk in a jail facility. Steinhauer based the initial housing assignment on jail policy, written standards, and experience. His decision was promptly reviewed by the CRB. The facts do not suggest that the maximum security unit assignment was not excessive in relation to the purpose of maintaining jail security. Because plaintiff was not subjected to "punishment," he was not entitled to notice and an opportunity to be heard.

**II.      Equal Protection**

In order to prove that he was deprived of his right to equal protection, plaintiff must present facts showing that the defendants subjected him to intentional, invidious discrimination. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982). At best, the materials submitted suggest that defendant Steinhauer did not treat plaintiff the same as detainee Rafael Jackson, who also faced serious charges. Because that evidence does not reveal purposeful discrimination, plaintiff's equal protection claim fails. *Id*.

### III.   Conclusion

IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. No. 32) be GRANTED.  The defendants are entitled to judgment in their favor on plaintiff's § 1983 claims.

**SUBMITTED:   June 12, 2006   .**

<pre>                                        s/Philip M. Frazier
                                        PHILIP M. FRAZIER
                                        UNITED STATES MAGISTRATE JUDGE</pre>