IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CARL WILSON,

    Plaintiff,

v.

T.J. COLLINS and
JOEL STEINHAUER,

    Defendants.                                    Case No. 03-cv-317-DRH

**MEMORANDUM & ORDER**

**HERNDON, District Judge:**

## I. INTRODUCTION

Before the Court is a Report and Recommendation ("R&R") (Doc. 45), issued by Magistrate Judge Proud, recommending Defendants T.J. Collins and Joel Steinhauer's Motion for Summary Judgment (Doc. 32) be granted. Plaintiff filed timely objections to the R&R, pursuant to **28 U.S.C. § 636(b)** and **Local Rule 73.1(b)** for this District, so therefore, Defendants' Motion for Summary Judgment shall be reviewed *de novo*. Plaintiff initiated the present action by filing a civil rights action pursuant to **42 U.S.C. § 1983** (Doc. 1), alleging that Defendants violated both his due process and equal protection rights afforded to him under Fifth and Fourteenth Amendments of the United States Constitution, for placing him in segregation as a pretrial detainee for an extended period of time without a prior

hearing or other written justification (Doc. 1; Doc. 36, p. 10). For the reasons stated herein, the Court finds Defendants' Motion must prevail.

## II. FACTUAL BACKGROUND

Plaintiff was arrested in Missouri on or about June 24, 2002 for an alleged outstanding parole violation and also because he was sought for questioning in relation to a homicide investigation (Doc. 33, p. 1; Doc. 36, p. 2). After his arrest, officials extradited Plaintiff to Illinois, where he was detained at the St. Clair County Jail (the "Jail") (*Id.*). It is the procedure of the Jail to conduct an initial assessment of each detainee and/or inmate upon their arrival, in order to determine their posed security risk, known as the "Inmate Risk Classification" (Doc. 33, p. 1). The initial assessment is based upon a series of inquiries, for which certain information is assigned "points," depending on the severity of the ascertained facts. The information is entered into a database, which outputs a tally of points for the detainee or inmate in order to classify his or her overall security risk, which also determines the appropriate method of housing.

Upon his arrival at the Jail, Plaintiff was interviewed by defendant Steinhauer, who is the "classification and disciplinary officer" for the Jail (Doc. 36, p. 3, Ex. A, p. 6). Defendant Collins is a Lieutenant Colonel for the Jail, responsible for the "supervision and management of the entire County Jail operations" (Doc. 36, p. 9, Ex. F, pp. 4-5). In conjunction with interviewing Plaintiff, defendant Steinhauer also used several sources to aid in determining Plaintiff's security risk classification,

identified as the following (Doc. 33, p. 2, Ex. A):

>  (a)  severity of the charge – murder;
>  (b)  serious offense history – violent prior offense;
>  (c)  escape history – attempted escape;
>  (d)  prior felony convictions – two;
>  (e)  bond amount – $120,000.00 and greater;
>  (f)  wanted by other agency – one pending felony want;
>  (g)  history of alcohol/drug abuse – no history;
>  (h)  address stability – same address less than 24 months;
>  (i)  age stability – 21 to 50; and
>  (j)  personality characteristics – responsive; assertive; alert; aggressive; and institutionalized.

During defendant Steinhauer's initial interview with Plaintiff, Plaintiff admitted to previously taking a correctional officer hostage, which caused him to be classified as a "combative detainee" (Doc. 36, Ex. A,[1] pp. 23-24).

Plaintiff's overall score corresponded to a "Maximum Plus" security risk classification, which required that he be housed in a maximum security segregation unit of the Jail, so that officials could observe his behavior to determine if he could later be released into the general population of the Jail (Doc. 33, p. 2; Doc. 36, p. 3). The Jail has a Classification Review Board (the "Board") that meets approximately every thirty days.  The first time Plaintiff's security risk classification was reviewed, the Board determined further observation was needed before deciding whether to take Plaintiff out of segregated housing.  The Board concluded the next time it met that Plaintiff could be released from segregation because he had so far not posed any problems, and was then housed on "murder block" (Doc. 36, p. 8, Ex. A, pp. 27-28).

---

[1] Exhibits A through G to Plaintiff's opposing memorandum (Doc. 36) to Defendants' summary judgment motion are actually located on the docket at document number 37.

Plaintiff, as a pretrial detainee, remained in segregation from the day of his arrival at the Jail, June 24, 2002, until August 28, 2002 (Doc. 33, p. 2).

### III. ANALYSIS

**A.  LEGAL STANDARD**

    **1.  *De Novo* Review**

Because Plaintiff filed timely objections to the R&R, this Court must undertake *de novo* review of the objected-to portions of the Report. **28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b); SOUTHERN DISTRICT OF ILLINOIS LOCAL RULE 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992)**.  The Court may "accept, reject, or modify the recommended decision." ***Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir. 1999)**.  In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to which specific objection has been made. ***Id***.

    **2.  Summary Judgment**

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c); *Oats v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)** (citing ***Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)**).  The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. ***Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)** (citing ***Celotex*, 477**

**U.S. at 323**). In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. ***Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1124 (N.D. Ill. 1995)**. The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. ***Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)** (citing ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)**).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings. Rather, the nonmovant must show through specific evidence that an issue of fact remains on matters for which he or she bears the burden of proof at trial. ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd*, **51 F.3d 276** (citing ***Celotex*, 477 U.S. at 324**). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." ***Anderson*, 477 U.S. at 249-50** (citations omitted); *accord* ***Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996)**; ***Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994)**. "[P]laintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment." ***Weeks*, 126 F.3d at 939**. Further, Plaintiff's own subjective belief does not create a genuine issue of material fact. ***Chiaramonte v.***

*Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997).

B.   DUE PROCESS

Plaintiff alleges that his constitutional due process rights were violated when he was placed in segregation as a pretrial detainee for approximately 60 days without a prior hearing or other written justification for doing so.  Plaintiff also alleges that he was arbitrarily deprived of his rights and privileges.  Further, Plaintiff attacks his "Maximum Plus" security risk classification, as it was allegedly largely based on the fact that Plaintiff had admitted to taking a correctional officer hostage while he was serving a sentence at the Pontiac Correctional Facility.  However, Plaintiff points out that this incident was over 20 years ago,  for which he had been tried, convicted and sentenced to eight years in prison; already served at the time of his arrival at the Jail (*see* Doc. 6, p. 2, n.1).

Plaintiff claims this hostage incident was taken out of context, and that he should not have been deemed "combative" as the incident did not result in any harm to the correctional officer taken hostage.  Instead, Plaintiff stated that the officer was "dirty," and that he let other inmates into Plaintiff's cell while he was away and that these inmates ended up taking or destroying all of Plaintiff's belongings (Doc. 33, Ex. C, pp. 18-19).  According to Plaintiff, the only way he could get the warden's attention regarding the officer's conduct was to take that officer hostage and that he never had any intention of actually harming anyone (*Id*.).  In fact, Plaintiff states that as a result, he was actually reimbursed approximately $1,200.00 for the damaged items (*Id*. at p. 20).  Plaintiff also feels defendant Steinhauer incorrectly

deemed him an "escape" risk due to the prior hostage incident, which led to an arguably improper risk classification.

An additional point of contention with Plaintiff's security risk classification is that Plaintiff believes defendant Steinhauer did not follow proper Jail procedure in compiling the assessed classification risk. Plaintiff observes that the Illinois County Jail Standards handbook, section 701.70 provides correctional facilities with guidance for developing written classification guidelines (Doc. 36, p. 4, Ex. D, p. 17). Next, Plaintiff cites to the Jail's "Classification General Order 01-Y-09" (hereinafter the "General Order") regarding classification assessments. The General Order lists seven sources[2] which the "Classification Officer and [Classification Review Board] will use[] . . . to ensure that an accurate assessment is obtained . . . ." (Doc. 36, p. 6, Ex. E).

Of the seven sources listed, Plaintiff argued that defendant Steinhauer never reviewed Plaintiff's medical records, institutional records, detention reports, criminal records or pre-sentence reports, nor did Plaintiff receive a psychological screening (Doc. 36, p. 7). Therefore, Plaintiff argues his risk classification was wrongly derived using improper procedural means. Further, Plaintiff faults defendant Collins, as defendant Steinhauer's supervisor, for not requiring him to follow proper procedure under the General Order (*Id*. at 7-10). Defendants, in their

---

[2] The seven sources as stated in the General Order are:
1) Booking record; 2) Medical/psychological screening examinations; 3) Criminal record and pre-sentence reports from probation department; 4) Intuition reports from prior incarceration; 5) State, local police/sheriff records; 6) NCIC date; and 7) Inmate interview.

summary judgment memorandum, assert that Plaintiff's due process rights were not violated, that he was not entitled to a pre-deprivation hearing before being placed into segregation, as this measure was administrative and non-punitive in nature (Doc. 33, pp. 3-7).

Due process requires that a pretrial detainee receive prior notice and opportunity to be heard before being placed into segregation as punishment; however, if placement is merely for legitimate administrative reasons, no process is required. **Higgs v. Carver, 286 F.3d 437, 438 (7th Cir. 2002)(citing *Rapier v. Harris*, 172 F.3d 999, 1004-05 (7th Cir. 1999); *Mitchell v. Dupnik*, 75 F.3d 517, 524-25 (9th Cir. 1996))**. Therefore, a court must look for whether a legitimate objective was presented and that it was not "imposed with intent to punish." **Rapier, 172 F.3d at 1002**.

A purely administrative reason for placing a pretrial detainee into segregation may be "to protect jail staff from [the detainee's] violent propensities." **Higgs, 286 F.3d at 438 (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979))(other citations omitted)**. This action would likely be viewed as "preventative" rather than "punitive." **Id.** In other words, a pretrial detainee, due to his confinement, cannot expect there not to be some imposed restrictions on his liberty. **Rapier, 172 F.3d at 1003**. Rather, "[t]he government may take measures that are reasonably calculated to effectuate the pretrial detention . . ." in order to "manage the facility . . ." and "to maintain security and order . . . ." **Id. (citing *Bell*, 441 U.S. at 537)**.

Plaintiff feels that his risk classification that caused him to be placed into segregation was incorrect and therefore, arbitrary. However, Defendants assert that placing Plaintiff in segregation based on his risk classification was done for a legitimate purpose, which was not intended as punishment, and because it was not punitive in nature, Plaintiff was not entitled to a pre-deprivation hearing.

Plaintiff's risk classification was largely based upon Plaintiff's prior criminal history and the fact that he admitted to taking a correctional officer hostage. Even though this incident may have occurred many years ago, and regardless of Plaintiff's real motive behind it, the Court finds that Defendants had a legitimate objective in placing him in segregation to determine whether he posed a risk to himself, other detainees/inmates, and especially, the other correctional officers at the Jail. Although the Court certainly realizes that segregation is *not* Club Med, in an environment where there is a narrow and sometimes fatal margin of error, correctional facilities must approach every potential security risk with extreme caution. **See, e.g., Bell, 441 U.S. at 538 ("Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial.")**. Plaintiff's assertion that he never presented an escape risk and that this was improperly considered as part of his risk classification assessment does not belie the severity of the potential threat imposed by a detainee who has

shown the capacity to take a correctional officer hostage.

Plaintiff cannot point to evidence showing that placing him in segregation was done for any reason other than a legitimate administrative purpose. Defendants have introduced a copy of the database printout showing Plaintiff's risk classification code and defendant Steinhauer has given deposition testimony to support how this classification was reached – supplemented by Plaintiff's own statements during his initial classification interview (Doc. 33, Ex. A).

While Plaintiff argues in both his opposing Response and his Objections to the R&R that not all the sources under the General Order were considered in this risk classification, he goes no further with this argument to show how consideration may have altered his classification for the better.  Plaintiff also contests that his segregation was, in fact, punitive, in that he was being punished for taking that officer hostage years ago, even though he had already been punished for that act.  However, the facts do not shed light on any type of punitive underpinnings in Plaintiff's risk classification, let alone an "expressed intent to punish."  **See Bell, 441 U.S. at 538 ("[T]he effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment.")**.

While Plaintiff cites **Holly v. Woolfolk, 415 F.3d 678, 679-80 (7th Cir. 2005)**, for the proposition that "any nontrivial punishment of a [pretrial detainee is

considered] a sufficient deprivation of liberty to entitle him to due process of law," the Court finds the instant matter distinguishable in that it concludes Plaintiff was not being punished. Therefore, his due process rights were not violated. As to the Plaintiff's contention that Defendants failed to follow proper procedure by considering all seven sources listed in the General Order when determining his initial risk classification, the Court refuses to get into the semantics of whether the language that the classification officer "will use" the seven sources is mandatory or discretionary.³ In this instance, given Plaintiff has not shown an existing material question that his outcome may have been different, it is not the Court's place to interpret interdepartmental Jail policies and practices if a legitimate purpose for the Jail's placement of Plaintiff is apparent.⁴ **See Rapier, 172 F.3d at 1003 ("'[P]eculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'")(citing Bell, 441 U.S. at 510, n.23 (quoting Pell v. Procunier, 417 U.S. 817, 827**

---

³ However, the Court suggests it may provide useful for the Jail to review the General Order to determine whether revision is necessary to eliminate any ambiguity.

⁴ The Court notes that in his Objections to the R&R, Plaintiff also states that the General Order states that "maximum security cells are used for 'disciplinary purposes,' among other purposes" (Doc. 36, p. 6, citing Ex. E, p. 1). However, the Court also observes that the General Order states: "Segregation inmates include those classified as *administrative segregation*, protective custody, and special needs. *Disciplinary segregation inmates are also segregated from general population but are not included in this discussion of classification levels*" (Ex. E, p. 4)(emphasis added). This language alone refutes Plaintiff's implication that segregation is only viewed as a punitive, disciplinary means of housing.

**(1974)(internal quotation mark omitted))**.

Further supporting Defendants' argument that their purpose was legitimately administrative to ensure the proper management of the Jail is the fact that the Board, upon its second review, found a downgrading of Plaintiff's risk classification to be in order. Although this was after Plaintiff had been in segregation for approximately 64 days, which is not a slight inconvenience for Plaintiff, the duration was not unreasonable, considering the Board is only able to convene about every 30 days and had, on its first review, determined Plaintiff remained a potential security risk.

Plaintiff also complains that he was deprived of certain privileges while placed in segregation, but this does not overcome that as a matter of law, if there is a legitimate, non-punitive administrative purpose in placing him in segregation, his due process rights were not violated, even though he may have been deprived of certain privileges. In sum, the Court finds Defendants are entitled to summary judgment with respect to Plaintiff's claim of violation of his due process rights. This is consistent with the finding recommended in the R&R.

C.     **EQUAL PROTECTION**

Plaintiff also alleges his equal protection rights were violated, in that he was treated differently than other detainees. Specifically, another detainee by the name of Rafael Jackson had been assessed by defendant Steinhauer a few months prior. Jackson was being detained on charges of murder, highjacking and aggravated highjacking – a criminal history somewhat akin to Plaintiff's (Doc. 36, p.

8, Ex. A, pp. 27-28). Instead of being housed in segregation, however, Plaintiff complains that Jackson was placed directly on "murder block" (*Id*.). Therefore, Plaintiff feels that because defendant Steinhauer perceived him as a "big man," reporting Plaintiff as 6 feet tall and weighing approximately 230 pounds (Doc. 36, Ex. A, pp. 15), and infers that because he took a *correctional* officer hostage, he was treated differently than others similarly situated (i.e., Rafael Jackson).

"[E]qual protection claims [can be] brought by a "class of one," where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." ***Village of Willobrook v. Olech*, 528 U.S. 562, 564 (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty*., 488 U.S. 336 (1989));** *see also* **Lunini v. Grayeb, 395 F.3d 761, 768 (7th Cir. 2005)(citing *Village of Willobrook*, 528 U.S. at 564)(other citations omitted)**.

In their summary judgment motion, Defendants assert that Plaintiff cannot meet his initial burden to show any intentional differential treatment or there was no rational basis for placing him in segregation (Doc. 33, p. 8). The Court agrees. While Rafael Jackson may have had a similar criminal history, and Plaintiff may have been characterized as a "big guy," this does not, by itself, evidence an existing question of fact that Plaintiff's equal protection rights were violated by Defendants. Rather, Defendants have demonstrated that a rational basis existed for

placing Plaintiff in segregation, one that was determined necessary due to administrative policy and classification. Plaintiff also fails to show a plausible existence of any intentional and invidious discrimination on Defendants' part. Further, as Defendant correctly points out, Plaintiff reveals nothing to evidence he was subjected to further restriction than any other detainee who received a "Maximum Plus" classification.

Although the Court recognizes the fact that Plaintiff objects to his risk classification, arguing it was improperly assessed, there is no question of fact existing which shows that placing Plaintiff in segregation was done for any other reason than as an administrative and cautionary measure. In other words, Plaintiff has failed to show that there was a punitive or invidious purpose behind Defendants' actions. For these reasons, the Court also finds the facts warrant granting summary judgment in Defendants' favor with respect to Plaintiff's claims regarding a violation of his equal protection rights. This finding also aligns with the recommendation stated in the R&R. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED**.

## IV. CONCLUSION

The Court, reviewing the matter *de novo*, finds that summary judgment on all of Plaintiff's claims in favor of Defendants is warranted. As such, the Court **ADOPTS** the R&R (Doc. 45) in its entirety, and hereby **GRANTS** Defendants' Motion for Summary Judgment (Doc. 32). Summary judgment shall be entered in favor of Defendants, thereby disposing of all counts of Plaintiff's Complaint (Doc. 1).

**IT IS SO ORDERED.**

Signed this 15th day of August, 2006.

/s/      David RHerndon
**United States District Judge**